**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTHONY JOHN CLIFFORD

          Petitioner,                    No. C 04-5256 PJH (PR)

    v.                                      **DENIAL OF PETITION FOR**
                                                **WRIT OF HABEAS CORPUS**

A. P. KANE, Warden, and JEANNE
WOODFORD, Director of California
Department of Corrections,

          Respondents.
_____/

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a supplemental answer, and has lodged exhibits with the court. Petitioner has responded with a traverse and a supplemental traverse, and has lodged exhibits with the court. The matter is submitted.

**BACKGROUND**

Petitioner pleaded guilty to second-degree murder for the killing of his seventeen-month old son. *See* Cal. Penal Code § 187(a). In 1991, the court sentenced him to fifteen years to life in prison. Petitioner's third subsequent parole suitability hearing was held on May 27, 2003, at which he received a two year denial of parole. Petitioner has exhausted his state judicial remedies. As grounds for habeas relief, petitioner asserts 1) the Board of Prison Term's denial of parole was arbitrary and capricious because there was insufficient reliable evidence to support it, and 2) the hearing was "pro forma" in violation of due process.

///

Petitioner does not dispute the following facts, which are taken from the pre-sentencing probation officer's report, exh. B at 2-3, and were incorporated by reference into the challenged parole suitability hearing decision, exh. C at 8.[1]

> While "babysitting" 17-month old Brian Gannon, [petitioner] beat the victim to death.
> Julie Gannon, the victim's mother, left the victim and his three-year-old brother, Mitchell Gannon, home with [petitioner], her live-in boyfriend. She left about 5:30 p.m. When she returned at 10 p.m. she saw [petitioner] walking out of the victim's bedroom tying the drawstring on the front of his sweatpants. She asked him what he was doing in the victim's room and [he] replied, "what are you accusing me of?" She then entered the bedroom and saw the victim with bruises on his face and noted that he was acting strange. She and [petitioner] took the victim to Northridge Hospital where Dr. McKitrick determined that the victim had been sodomized within the last 24 hours. [Petitioner] was placed under arrest for 286[c] penal code (sodomy with child under 14 years). Dr. McKitrick also stated that the victim had been chronically abused both physically and sexually. The victim was subsequently transported to the University of California at Los Angeles (UCLA) hospital where surgery was performed the next day. The victim died from his injuries on March 7, 1989 at 12:20 a.m. [Petitioner] was then [re-booked] for the charge of murder. The autopsy revealed a deep bruise inside the buttocks that is believed to have been caused by a thumb forcing open the anus. . . . Other tests and examinations, however, failed to conclusively prove sodomy or the presence of semen. The cause of death was given as severe internal injuries.

Exh. B at 2-3.

Petitioner was twenty-eight years old at the time of the offense. He admits fatally beating the victim, claiming that he lost control of himself after the baby threw up on him. However, he has consistently denied sexually molesting the victim. Petitioner claims that the victim suffered from a rare blood disease that could explain the bruise found inside the victim's buttocks. The probation officer concluded "It appears that cold facts do not exist to prove [petitioner] sodomized or otherwise molested the victim. However, there appears to be enough circumstantial evidence to form that opinion, and certain injuries to the victim appear to support no other conclusion." Exh. B at 2-3.

Petitioner's prior criminal record consists of a 1980 arrest for receiving stolen property, for which he states he received summary probation, a 1983 conviction for driving with a suspended license, a 1984 arrest for aiding and abetting an illegal exhibition of

---

[1] All citations to exhibits refer to those attached to respondent's answer unless otherwise noted.

2

speed, and a 1987 conviction for drunk driving.  He does not have a juvenile record.

In the first couple of years of his sentence, petitioner received three counseling memoranda for minor rule violations, and one serious write-up for theft of state food.  Since 1993, his prison disciplinary record has been clean.  In prison, petitioner, an admitted alcoholic, has made laudable efforts to improve himself.  He has participated in Alcoholics Anonymous, vocational training, and the other self-help groups available to him in prison.  Exh. F at 4.  He has acquired marketable skills in the office machine repair trade.  *Id.*

In the psychological evaluation prepared for the challenged suitability hearing, the psychologist estimated petitioner's potential for violence if released would be "no more than the average citizen. . . ."   Exh. E at 5.  However, should petitioner resume abusing alcohol and drugs, "his violence potential would be considered much higher than the average citizen in the community."  *Id.* at 6.  Petitioner's correction counselor "agonized over trying to assess the degree of risk" petitioner posed to the public, contrasting petitioner's apparently genuine remorse and near-model behavior in prison with his extreme violence against a helpless infant.  Exh. F at 6.  Petitioner has not been exposed to young children in prison.  "Therefore it is extremely difficult to gauge his risk."  *Id.*  The counselor concluded that petitioner would pose a "low to moderate degree of threat to public safety" if he remained sober, and a  "no less than moderate" risk if he resumed using drugs.  *Id.*

At the challenged parole suitability hearing, the Los Angeles County District Attorney's Office opposed parole on the grounds that the available evidence supported an inference that petitioner molested the victim, and the counselor still considered him a low to moderate degree of risk to the community.  During closing statements, petitioner requested a continuance to obtain a copy of the preliminary hearing transcript.  Presiding Commissioner Moore denied the request, stating "we can request that transcript, and see if we can get it for next time."  Exh. C at 73.  Petitioner has submitted a declaration in which he alleges that the Board's recess between the hearing and the decision lasted only ten minutes, and that one of the commissioners was "having coffee and conversing" with the Deputy District Attorney "during the entire ten minutes."  Traverse Exh. C.

The Board commended petitioner for his achievements over the last ten years, but issued a two-year denial of parole because petitioner "would pose an unreasonable risk of danger to society or a threat to public safety, if released at this time." Exh. C at 86. The committing offense was "paramount." *Id.* The victim was "abused during the offense," and the motive "was inexplicable and very trivial in relationship to the offense." *Id.* at 86-87. The Board also cited the psychologist and counselor's risk assessments, petitioner's "escalating pattern of criminal conduct and violence," history of substance abuse, and "history of unstable and tumultuous relationships with others" and concluded that "a longer period of observation or evaluation" was required before parole. *Id.* at 87-91.

Petitioner filed a habeas corpus challenge to the decision in Los Angeles County Superior Court. The court denied it, finding that the Board's denial of parole was supported by "some evidence" under *In re Rosenkrantz*, 29 Cal.4th 616, 667 (2002). Exh. G at 1-3. Petitioner then filed a habeas petition in the California Court of Appeal. Again, his challenge was denied and the court found that "some evidence," specifically the nature of the commitment offense, supported the Board's decision. Exh. H. The court quoted *Rosenkrantz*; holding "the nature of petitioner's offense, alone, can constitute a sufficient basis for denying parole." *Id.* The California Supreme Court denied review. Exh. I.

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2001), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**DISCUSSION**

**1. Federally Protected Liberty Interest In Parole**

Respondent argues that the petition must be dismissed because petitioner does not have a federally protected liberty interest in parole. Respondent's argument was based on a district court decision in *Sass v. California Board of Prison Terms,* 376 F.Supp.2d 975, 983 (E.D. Cal. 2005). However, the Ninth Circuit subsequently made clear that, because California's parole statute uses mandatory language, "California inmates continue to have a liberty interest in parole after *In re Dannenberg*, 34 Cal. 4th 1061 (2005)." *Sass v.*

1  *California Bd. of Prison Terms*, 461 F.3d 1123, 1125 (9th Cir. 2006) (finding that district
2  court misread *Dannenberg* which did not hold that there is no constitutionally protected
3  liberty interest in parole — but upholding denial of petition on other grounds).  Because
4  petitioner does have a constitutionally protected liberty interest in a parole date, the court
5  will consider whether he was deprived of that interest without due process.

      **2.  Due Process**

      Petitioner claims that the Board's denial of parole was arbitrary and capricious and that the Board was biased.

          **a.  Arbitrary and Capricious**

10  Petitioner claims that the Board's denial of parole was arbitrary and capricious, thus
11  violating his right to due process, because there was not reliable evidence to support a
12  finding of unsuitability.  He also argues the Board violated his due process rights because it
13  did not "duly consider" his application for parole "on the basis of specified factors" and the
14  Board made "a series of contrary findings clearly not supported by the evidence."  Traverse
15  at 27-30 (internal quotations omitted).  A parole board's decision must be supported by
16  "some evidence" to satisfy the requirements of due process.  *McQuillion v. Duncan*, 306
17  F.3d 895, 904 (9th Cir. 2002).  It is a deferential standard of review, merely requiring that
18  the decision have "*some* basis in fact" and the evidence have "some indicia of reliability"
19  *Id.* (internal quotations and citations omitted); *see also Rosas v. Nielsen*, 428 F.3d 1229,
20  1232 (9th Cir. 2005).  Showing that some of the board's cited factors are not supported
21  does not establish a due process violation.  *See Biggs v. Terhune*, 334 F.3d 910, 916 (9th
22  Cir. 2003) (in spite of the fact that several of the Board's findings were unsupported, there
23  was some evidence supporting the Board's decision, thus the prisoner was not entitled to
24  relief).

25  California Penal Code section 3041 (a) requires the Board to "set a release date
26  unless. . . public safety requires a more lengthy period of incarceration. . . ."  Regardless of
27  the time served, a life prisoner "shall" be denied parole if "in the judgment of the panel the
28  prisoner will pose an unreasonable risk of danger to society if released from prison."  15

Cal. Code of Regulations ("CCR") § 2402(a). The Board shall consider "all relevant, reliable information." CCR § 2402(b). But, "the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." CCR § 2402(c). An offense "committed in an especially heinous, cruel or atrocious manner" indicates unsuitability for release. *Id.* Here, the Board stated that the commitment offense was "paramount" in the denial of parole.

One factor to determine whether the commitment offense was committed in an especially heinous, cruel or atrocious manner is whether the "motive was inexplicable or very trivial in relation to the offense." *Id.* Petitioner's stated motive for the killing — that the infant threw up on him — is about as trivial in relation to the offense as can be imagined. It constitutes "some evidence," totally reliable, to support the Board's decision. *McQuillion*, 306 F.3d at 904.

Another factor to determine whether the commitment offense was committed in an especially heinous, cruel or atrocious manner is whether the "victim was abused, defiled or mutilated during the offense." CCR § 2402(c). Here, the evidence of sexual molestation includes the mother's report that she discovered petitioner leaving the infant's room tying the drawstring of his sweatpants, Dr. McKitrick's determination that the victim had been sodomized within the last 24 hours, and the deep bruise in the buttocks reported after the autopsy. This evidence does not conclusively prove that petitioner sexually abused the victim during the offense, but it does constitute "some evidence, with some indicia of reliability," that he did. *Rosas*, 428 F.3d at 1232. Because there was reliable evidence that the offense was committed in an especially heinous, cruel or atrocious manner, the Board's denial of parole did not violate petitioner's right to due process.

Beyond the commitment offense, the Board had other evidence that petitioner remained an "unreasonable risk of danger to society if released from prison." CCR § 2402(a). The evaluations of petitioner by the psychologist and by his Correction Counselor both indicated that he posed a significant risk to the community if he resumed using drugs or alcohol. Moreover, petitioner has not been exposed to young children in prison.

7

"Therefore it is extremely difficult to gauge his risk." Ex. F at 6. These reports constitute reliable evidence to support the Board's denial of parole.

Despite significant evidence that petitioner is remorseful and has made major strides in his rehabilitation, the Board's decision to deny parole was independently supported by reliable evidence that petitioner's commitment offense was committed in an especially heinous, cruel or atrocious manner, and that he remains an unreasonable threat to society. Accordingly, the Board's denial of parole was not arbitrary and capricious and did not violate petitioner's right to due process.

Petitioner also argues that due process precludes the Board from basing a third denial of parole solely on the circumstances of his offense. In *Biggs*, the Ninth Circuit rejected a denial of parole due process claim, but stated "Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole." 334 F.3d at 916. In *Sass*, the Ninth Circuit backed away from the dicta in *Biggs*. 461 F.3d at 1129. "Under ADEPA it it not our function to speculate about how future parole hearings could proceed." *Id.* (holding Sass' prior convictions and the gravity of his commitment offense sufficient bases to deny parole). Recently, however, the Ninth Circuit has revived the *Biggs* dicta. *See Irons v. Carey*, No. 05-15275, slip op. 2469, 2480-82 (9th Cir. March 6, 2007). The court restated the *Biggs* warning against continued reliance on pre-imprisonment conduct to deny parole and further noted that the petitioners denied relief in *Biggs, Sass*, and *Irons* had all not yet served the minimum terms of their sentences when found unsuitable for parole. *Id.* The Board's conclusion that petitioner posed an unreasonable risk to public safety if paroled was not based solely on the circumstances of the commitment offense or conduct prior to imprisonment, as discussed above   Furthermore, even if the Board had relied solely on the commitment offense, petitioner — like the petitioners in *Biggs, Sass*, and *Irons* — had not even served his minimum term.

Petitioner had not served his minimum term, the Board's denial of parole was

1 supported by factors other than the circumstances of his offense, and those circumstances
2 indicate a greater risk to public safety than the circumstances considered in *Biggs, Sass*,
3 and *Irons*. There thus was sufficient reliable evidence to support the denial, so petitioner's
4 rights were not violated. The state courts' rejection of this claim was not contrary to, nor an
5 unreasonable application of, clearly established United States Supreme Court authority.

### b. Bias

A prisoner is entitled to a parole board that is free from bias or prejudice. *O'Bremski v. Maas*, 915 F.2d 418, 422 (9th Cir. 1990). In the "grounds raised" section of petitioner's original claim, he states "The hearing was adjudicated pro forma in violation of petitioner's [s]tate and federal right to due process." He does not argue that the Board harbored any bias or prejudice towards him. He does argue that Commissioner Moore's statement that petitioner had not served enough "time for the crime" demonstrates that the denial was arbitrary and capricious. Petition at 16. However, that does not establish any bias on the part of the Board. In his traverse, petitioner alleges that the Board has only granted parole in 1.7 percent of hearings and argues that it is impossible for all those offenses to be "particularly egregious." Traverse at 16. Petitioner does not, however, provide any evidence that the Board labels ninety-eight percent of the offenses "particularly egregious." Nor would a 1.7 percent parole approval rate necessarily indicate any systemic bias. *Cf. California Dept. of Corrections v. Morales*, 514 U.S. 499, 510-11 (1995) (citing high percentage of parole denials as basis for deferring suitability hearings). Even if petitioner could show a systemic bias, he has not shown that *his* denial was the result of bias or prejudice.

Petitioner also alleges that during the ten minute recess before the Board announced his denial of parole, he observed "Commissioner Thomas Gioquento and Deputy District Attorney Diane Vezzani having coffee and conversing during the entire ten minutes." However, even in a trial setting, proof that there was a contact between the judge and the prosecutor does not merit habeas relief; "only proof of an improper contact does" (e.g., an ex parte contact where the prosecutor is acting as an advocate for the

government). *McKenzie v. McCormick*, 27 F.3d 1415, 1420 (9th Cir. 1994), *cert. denied*, 513 U.S. 1118 (1995).  Petitioner has made no allegation that the district attorney was conveying information relevant to his parole determination.

Petitioner also notes that when denying his request for a continuance to procure evidence to rebut the inference that he had molested the victim, Presiding Commissioner Moore stated "we can get it for the next hearing."  Ex. C at 73.  Petitioner argues that statement implies predetermination.  The statement does tend to show Commissioner Moore was assuming — *at that point in time* — that parole would be denied.  However, the statement was made well into closing arguments so it does not give any insight into the Commissioner Moore's state of mind before petitioner spoke and presented evidence.  Again, petitioner has alleged no facts that demonstrate any bias or prejudice against him.  Moreover, the Board's decision was tailored to petitioner's individual facts and some reliable evidence supported the finding of unsuitability for parole.

Petitioner's constitutional rights were not violated, so the state courts' rejection of this claim could not have been contrary to, or an unreasonable application of, clearly established Supreme Court authority.

### 3.  Standard of Proof For Sentencing

In his supplemental traverse petitioner argues the Board is precluded, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), from considering circumstances of his offense other than those which he admitted when he pled guilty.  A traverse is not the proper pleading to raise additional grounds for relief, *see Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994), so this claim is not properly before the court.  However, even if it were properly pleaded, petitioner's *Apprendi* argument is meritless.  In *Apprendi* and *Blakely,* the Court held that a judge may not increase a maximum sentence based on facts that are not found by a jury or stipulated to by the defendant.  *See Apprendi*, 530 U.S. at 490 (other than "a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); *Blakely*, 542 U.S. at 303

(*Apprendi's* statutory maximum is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant"). No case in the *Apprendi* line has considered the requirements for parole determinations. *See*, *e.g.*, *id*. Therefore, petitioner's proposed application of *Apprendi* and its progeny to parole hearings is not "clearly established Federal law, as determined by the Supreme Court of the United States" and thus cannot be a basis to grant him habeas relief. 28 U.S.C. § 2254(d).

Moreover, the *Apprendi* line is grounded in the Sixth Amendment right to a jury trial and the Fourteenth Amendment right to due process. Even petitioner does not suggest there is a constitutional right to a jury in parole proceedings, and a beyond a reasonable doubt evidentiary standard would represent a massive departure from *pre-Apprendi* Supreme Court precedent outlining due process requirements in the parole context. *See e.g. Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972). Thus, in addition to not being properly before the court because it was only raised in a traverse, the claim is without merit.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 3, 2007.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.04\CLIFFORD256.RUL

11